United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 15, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-10230** |
| **ISRAEL RODRIGUEZ, JR.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | **CHAPTER 13** |

**MEMORANDUM OPINION**

Santander Bank, N.A., as servicer for Santander Consumer USA, Inc., objects to confirmation of Debtor's chapter 13 plan on two grounds. First, Santander contends it is entitled to receive the loan's contractual interest rate and that the plan impermissibly modifies that rate. Second, Santander argues that paragraph 10 of the Southern District of Texas Uniform Plan and Motion for Valuation of Collateral violates the lien-retention requirement because it provides that the creditor retains its lien only until completion of all plan payments, rather than until the debtor receives a discharge. The debtor, Israel Rodriguez, Jr., responds that the contractual interest rate may be modified through the Chapter 13 plan and that the form plan complies with the lien-retention requirement because completion of all payments required by the plan triggers entry of a discharge. The Court held a hearing on February 23, 2026. For the reasons stated herein, Santander's objection to confirmation is overruled.

The Court further concludes that paragraph 10 of the Southern District of Texas Uniform Plan and Motion for Valuation of Collateral does not violate the lien-retention requirement, and that Rodriguez's Amended Chapter 13 Plan filed May 13, 2026, is confirmed.

## I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

### A.  Background

1.   On October 6, 2023, Israel Rodriguez, Jr., ("*Debtor*") purchased a 2020 Toyota Camry.[1] Debtor financed the purchase by borrowing money from Santander Bank, N.A., as servicer for Santander Consumer USA, Inc. ("*Santander*"), pursuant to the "Motor Vehicle Retail Installment Sales Contract – Simple Finance Charge (With Arbitration Provision)" (the "*Loan Agreement*").[2]

2.   On December 23, 2025, (the "*Petition Date*") Debtor filed for bankruptcy protection under chapter 13 of the Bankruptcy Code[3] (the "*Petition*") initiating the instant bankruptcy case.[4]

3.   On January 5, 2026, Debtor filed his "Chapter 13 Plan."[5]

4.   On January 15, 2026, Santander filed its timely Proof of Claim ("*Proof of Claim*").[6]

5.   Santander claims that it has a perfected purchase money security interest in Debtor's 2020 Toyota Camry, VIN #: 4T1G11AKXLU882210.[7] Santander also claims that as of the Petition Date, Debtor owed Santander $26,232.64 with an interest rate of 13.22%.[8]

6.   On February 13, 2026, Debtor filed his "Amended Chapter 13 Plan."[9]

---

[1] ECF No. 43, at 1.
[2] ECF No. 43, at 1.
[3] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.
[4] ECF No. 1.
[5] ECF No. 15.
[6] ECF No. 26-5; ECF No. 16, at 2 (stating that the bar date for filing non-governmental proofs of claim was March 3, 2026).
[7] ECF No. 43, at 1.
[8] ECF No. 43, at 1.
[9] ECF No. 29.

7. On February 16, 2026, Santander filed its "Objection to Confirmation of the Amended Chapter 13 Plan" ("*Objection*").[10]

8. On February 23, 2026, the Court held a hearing and ordered briefing.

9. On March 3, 2026, Santander filed its "Brief in Support of Objection to Confirmation of the Amended Chapter 13 Plan."[11]

10. On March 23, 2026, Debtor filed the "Reply Brief of Israel Rodriguez, Jr."[12]

11. On April 6, 2026, Yvonne V. Valdez, the chapter 13 Trustee (the "*Trustee*") filed the "Chapter 13 Trustee's Brief in Support of Confirmation over Objection to Plan Form by Santander Bank."[13]

12. On April 13, 2026, Santander filed the "Sur-Reply Brief of Santander Bank, N.A in Support of Objection to Confirmation of the Amended Chapter 13 Plan."[14]

13. On May 13, 2026, Debtor filed his second "Amended Chapter 13 Plan."[15]

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[16] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[17] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O), this proceeding contains core matters, as it primarily concerns confirmation of a chapter 13 plan and administration of the Debtor's bankruptcy estate.[18] This

---

[10] ECF No. 30.
[11] ECF No. 43.
[12] ECF No. 44.
[13] ECF No. 45.
[14] ECF No. 46.
[15] ECF No. 48.
[16] *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[17] 28 U.S.C. § 157(a); *see also Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[18] *See* 11 U.S.C. § 157(b)(2)(A), (L), (O).

proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[19]

This Court may only hear a case in which venue is proper.[20] 28 U.S.C. § 1408(1) provides that a bankruptcy proceeding may be commenced in the district "in which the . . . residence . . . of the person or entity that is the subject of such case ha[s] been located for the one hundred and eighty days immediately preceding such commencement."[21] Debtor's principal residence in Brownsville, Texas,[22] and therefore, venue of this proceeding is proper.

### B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[23] The confirmation of a chapter 13 plan by this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern v. Marshall* does not prohibit this Court from entering a final order here.[24] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented impliedly to adjudication of this dispute by this Court.[25] None of these parties have ever objected

---

[19] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).

[20] 28 U.S.C. § 1408.

[21] 28 U.S.C. § 1408(1).

[22] ECF No. 1, at 2.

[23] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[24] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern*'s limited holding herein.") (quoting *Stern*, 564 U.S. at 475, 503).

[25] *Wellness Int'l Network*, 135 S. Ct. at 1947 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires

to this Court's constitutional authority to enter a final order. These circumstances unquestionably constitute implied consent.[26] Thus, this Court wields the constitutional authority to enter a final order here.

### III.   ANALYSIS

Santander contends that it is entitled to the contractual interest rate on the underlying debt and that paragraph 10 of the Southern District of Texas's "Uniform Plan and Motion for Valuation of Collateral" (the "*Plan*")[27] violates 11 U.S.C. § 1325(a)(5)(B)(i)(I) because it does not require Debtor to obtain a discharge before Santander's lien is released.[28] But Debtor and the Trustee argue that the contractual interest rate can be modified, and that although paragraph 10 of the Plan does not *explicitly* require Debtor to obtain a discharge before the lien is released, the Plan does require Debtor to complete all Plan payments, and 11 U.S.C. § 1328(a) provides that the Court "shall" grant Debtor a discharge once the Plan payments are completed.[29]

### A.  Debtor's Chapter 13 Plan

Paragraph 9(A) of Debtor's chapter 13 Plan provides for claims brought under 11 U.S.C. § 1325(a)(9) ("*910 Claims*").[30] As part of Congress's enactment of BAPCPA, § 1325(a)(9) was amended to provide that:

> [S]ection 506 shall not apply to a claim . . . if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.[31]

---

that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[26] *See id.*

[27] ECF No. 48, ¶ 10.

[28] ECF No. 43, at 1-2.

[29] ECF No. 44, at 9, 12.

[30] ECF No. 48, ¶ 9.

[31] 11 U.S.C. § 1325(a)(9).

Thus, a debtor cannot bifurcate and cramdown a secured claim if the creditor has a purchase money security interest in the collateral, and the collateral was obtained within the 910 days prior to the petition date.[32] In the Fifth Circuit, the debtor has the burden of showing that a chapter 13 plan meets all of § 1325's confirmation requirements.[33]

Here, Debtor purchased the 2020 Toyota Camry on October 6, 2023, which was within 910 days of the Petition Date.[34] Thus, Santander has a valid 910 Claim, meaning that the claim cannot be bifurcated into secured and unsecured claims under 11 U.S.C. § 506(a).[35] Furthermore, Debtor's unconfirmed Plan proposes to pay Santander's claim of $26,232.64 at a modified interest rate of 7.75%, beginning in the first month of the Plan and ending in month fifty-eight, for a total payout of $32,175.94.[36] But Santander objected to the proposed interest rate of 7.75%, and to the Plan's language at paragraph 10, arguing that both the interest rate and language violate 11 U.S.C. § 1325(a)(5)(B)(i)(I).[37]

**B. Whether § 1325(a)(5)(B)(i)(I)(aa)'s reference to "the payment of the underlying debt determined under nonbankruptcy law" requires Debtor to pay "the full contractual debt" as opposed to "the underlying debt" before the lien can be released**

**1. Amount of the underlying debt**

The Court will first analyze § 1325(a)(5)(B)(i)(I)(aa) to determine the amount of the underlying debt. Section 1325(a)(5)(B)(i)(I)(aa) provides that "the court shall confirm a plan if with respect to each allowed secured claim provided for by the plan— the plan provides that (I) the holder of such claim retain the lien securing such claim until . . . (aa) payment of the underlying debt determined under nonbankruptcy law . . . ."[38]

---

[32] 11 U.S.C. § 1325(a)(9).
[33] *In re Stanley*, 224 F. App'x 343, 346 (5th Cir. 2007).
[34] ECF No. 43, at 1; ECF No. 1.
[35] 11 U.S.C. § 1325(a)(9).
[36] ECF No. 29, ¶ 9.
[37] ECF No. 43, at 1-2.
[38] 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa).

Here, § 1325(a)(5)(B)(i)(I)(aa) refers to an "allowed secured claim," and the amount of an "allowed secured claim" is determined by the claims allowance process as of the Petition Date.[39] Furthermore, as explained *supra*,[40] Santander has a 910 Claim, which means that Santander's allowed secured claim cannot be bifurcated and the full claim amount is secured.[41] Thus, under § 1325(a)(5)(B)(i)(I)(aa), Santander's allowed secured claim is what Debtor owed under the Loan Agreement as of the Petition Date, which was $26,232.64.[42]

### 2. Amount of the interest rate on the underlying debt

The Court will next analyze 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa)'s plain language to determine the appropriate interest rate on the $26,232.64 that Debtor owed under the Loan Agreement as of the Petition Date.[43] The $26,232.64 consists of the principal, interest accrued at the Loan Agreement's rate of 13.22%, and late fees.[44]

The U.S. Supreme Court held, "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."[45] The Supreme Court has also used the "the grammatical 'rule of the last antecedent,'" to interpret statutes.[46] According to the rule, "a limiting clause or phrase . . . should be read to modify only the noun or phrase that it immediately follows."[47]

---

[39] 11 U.S.C. § 502(b); 11 U.S.C. § 506; *In re Hopkins*, 371 B.R. 324, 327 (Bankr. N.D. Ill. 2007) ("For purposes of 1325(a)(5)(B)(i)(I)(aa), the 'debt determined under nonbankruptcy law' is whatever amount the debtor owed the creditor under the contract at the time the petition was filed. When the creditor's claim is secured by a lien on a '910 vehicle,' the amount of the claim is treated as fully secured, and under 1325(a)(5)(B)(i)(I)(aa) the creditor retains its lien until the claim is paid in full.").

[40] *See supra* III.A.

[41] 11 U.S.C. § 1325(a)(9); *In re Hopkins*, 371 B.R. 324, 327 (Bankr. N.D. Ill. 2007).

[42] ECF 26-5, at 2.

[43] ECF 26-5, at 2.

[44] ECF 26-5, at 4.

[45] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436, (2019).

[46] *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).

[47] *Id.*

Section 1322(b)(2) of the Bankruptcy Code permits a chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."[48] The modifications may include "terms such as the amount of the payments on the claim, the timing of the payments and the finance charges."[49]

Here, the rule of last antecedent provides that the phrase in question modifies the noun it immediately follows.[50] 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa) provides that "(I) the holder of such claim retain the lien securing such claim until the earlier of— (aa) payment of the underlying debt determined under nonbankruptcy law."[51] The phrase "determined under nonbankruptcy law" immediately follows the noun "underlying debt," and therefore, "determined under nonbankruptcy law" modifies "underlying debt," not "payment."[52] Thus, although the amount of Santander's allowed secured claim is determined by the Loan Agreement and non-bankruptcy law, the loan's payment terms are determined by the Loan Agreement and federal bankruptcy law.[53]

Furthermore, § 1322(b)(2) allows modification of secured creditors' rights.[54] Therefore, under § 1322(b)(2), the "payment" terms of the Loan Agreement, such as the interest rate, can be modified.[55] In *Till v. SCS Credit Corp.*, the Supreme Court held that when cramming down a creditor's claim in chapter 13, the prime-plus interest rate can be used to determine the interest rate on the creditor's allowed secured claim.[56] The prime-plus interest rate is the U.S. national

---

[48] 11 U.S.C. § 1322(b)(2).

[49] *In re Hopkins*, 371 B.R. at 325 (quoting 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1322.06[1] at 1322–23 (15th ed. 2007)).

[50] *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).

[51] 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa).

[52] *See id.*; 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa).

[53] *See In re Hopkins*, 371 B.R. at 326 ("Ordinarily, 'clauses that modify nouns… attach to the nearest noun preceding them'" and since "[t]he noun preceding the phrase 'determined under nonbankruptcy law' is 'debt' . . . it is the 'debt,' not the 'payment,' that nonbankruptcy law determines.").

[54] *Id.*

[55] *See id.*

[56] *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004).

prime rate plus a risk premium.[57] Although Santander's 910 Claim cannot be crammed down, the interest rate on a 910 Claim can be modified under § 1322, and so the Plan's prime-plus interest rate of 7.75% can be used to determine the interest rate on Santander's allowed secured claim.[58]

Thus, under 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa), Santander's lien will be released once Debtor pays what he owes under the Loan Agreement as of the Petition Date, $26,232.64, at the prime-plus interest rate of 7.75%. Therefore, Debtor has shown that the Plan does not violate 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa) by paying Santander's claim of $26,232.64 at the prime-plus interest rate of 7.75%.

## C. Whether requiring a lien release upon completion of all payments under the Plan violates § 1325(a)(5)(B)(i)(I)(bb)

The Plan does not violate 11 U.S.C. § 1325(a)(5)(B)(i)(I)(bb) by requiring lien release upon completion of all Plan payments, rather than upon discharge. Section 1325(a)(5)(B)(i)(I)(bb) provides that "the court shall confirm a plan if with respect to each allowed secured claim provided for by the plan— the plan provides that (I) the holder of such claim retain the lien securing such claim until . . . (bb) discharge under section 1328."[59] In comparison, the Plan provides that "each holder of an allowed secured claim provided for by this Plan shall retain its lien until . . . (ii) the completion of all payments provided by this Plan."[60]

11 U.S.C. § 1328 provides that "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided

---

[57] *Id.*
[58] 11 U.S.C. § 1325(a)(9); *see also In re Hopkins*, 371 B.R. at 327.
[59] 11 U.S.C. § 1325(a)(5)(B)(i)(I)(bb).
[60] ECF No. 29, ¶ 10.

for by the plan."[61] Additionally, chapter 13 plans can include "any appropriate provision not inconsistent with title 11."[62]

Here, § 1325(a)(5)(B)(i)(I)(bb) requires lien release upon discharge, and the Plan provides that the lien will be released upon completion of all Plan payments.[63] According to § 1328, once the Plan payments are completed, the Court "shall" grant a discharge.[64] Thus, the Plan language has the same effect as § 1325(a)(5)(B)(i)(I)(bb) because under the Plan, once all the payments have been completed, § 1328 requires the Court to grant a discharge, assuming no exceptions to discharge apply.[65]

But Santander argues that if Debtor does not receive a discharge and Santander's lien that it acquired under the Loan Agreement is released, then Debtor will get the benefit of a discharge without receiving a discharge.[66] Santander points to *In re Lilly,* a Northern District of Illinois Bankruptcy Court case, which held that the interest rate on a secured claim can be modified during a bankruptcy case, but if the debtor is denied a discharge, the interest rate reverts to the contractual rate.[67] Thus, according to *In re Lilly*, a debtor cannot get the benefit of a discharge without the discharge.[68] But here, the Plan language is not inconsistent with § 1325(a)(5)(B)(i)(I)(bb), because even absent a discharge, § 1325(a)(5)(B)(i)(I) requires lien release when a secured claim is paid in full, and completion of *all* payments under the Plan would necessarily require that Santander's allowed secured claim is paid under non-bankruptcy law.[69] Thus, because completion of the Plan

---

[61] 11 U.S.C. § 1328.

[62] *In re Martin*, No. 22-30148, 2022 WL 16937609, at *5 (Bankr. S.D. Tex. Nov. 14, 2022).

[63] ECF No. 29, ¶ 10.

[64] 11 U.S.C. § 1328(a).

[65] 11 U.S.C. § 1328.

[66] ECF No. 43, at 6.

[67] *In re Lilly*, 378 B.R. 232, 236-37 (Bankr. C.D. Ill. 2007).

[68] *Id.*; *see also In re Harrison*, 394 B.R. 879, (Bankr. N.D. Ill. 2008) (holding that loan payment terms can be modified, but "such modification shall have no post-bankruptcy affect and any remaining amount due under the terms of the Contract shall be due pursuant to state contract law at the conclusion of the Modified Plan").

[69] *See In re Hopkins*, 371 B.R. at 325-27.

payments means that Santander's secured 910 Claim was satisfied in full, paragraph 10 of the Plan is not inconsistent with § 1325(a)(5)(B)(i)(I)(bb).

Furthermore, a property lien release is not tied exclusively to a discharge of personal liability, and eligibility for a discharge is not a condition to filing a chapter 13 case.[70] For example, in *In re Blendheim*, the Ninth Circuit Court of Appeals held that, "[f]undamentally, a discharge is neither effective nor necessary to void a lien or otherwise impair a creditor's state-law right of foreclosure."[71] In *In re Scantling*, the Eleventh Circuit Court of Appeals held that, "'a Chapter 13 debtor need not be eligible for a discharge in order to take advantage of the protections afforded by Chapter 13.' If a strip off of a worthless lien is available under the bankruptcy code without a discharge a debtor may take advantage of such relief."[72]

Accordingly, in the instant case, discharge is not required for Santander's lien on its allowed secured claim to be released. But Santander points to in *In re Donnadio*, in which the U.S. Bankruptcy Appellate Panel of the Sixth Circuit held that a debtor's chapter 13 plan had to explicitly follow § 1325(a)(5)'s requirements that the lien be retained until the payment of the underlying debt determined under nonbankruptcy law or discharge under § 1328.[73] The debtor's proposed plan in *In re Donnadio*, however, was inconsistent with § 1325(a)(5)(B)(i)(I)'s requirements because it did not have language addressing retention of the creditor's lien.[74] In the instant case, Debtor's Plan is not inconsistent with § 1325(a)(5)(B)(i)(I) because paragraph 10 provides that Santander's lien will be retained until payment of the underlying debt as determined

---

[70] *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.").

[71] *In re Blendheim*, 803 F.3d 477, 493 (9th Cir. 2015).

[72] *In re Scantling*, 754 F.3d 1323, 1329 (11th Cir. 2014) (quoting *In re Davis*, 716 F.3d 331, 338 (4th Cir. 2013)).

[73] *In re Donnadio*, 608 B.R. 507, 510-11 (B.A.P. 6th Cir. 2019) (citing *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 462 (6th Cir. 2009)).

[74] *Id.* at 509-10.

under nonbankruptcy law, or until completion of all Plan payments.[75] Because completion of the Plan payments means that Santander's allowed secured claim under the Loan Agreement will be satisfied in full, Debtor has shown that paragraph 10 of the Plan does not violate § 1325(a)(5)(B)(i)(I)(bb) of the Bankruptcy Code.

   **D. Whether paragraph 10 of the Plan violates 11 U.S.C. § 1325(a)(5)(B)(i)(II) because it fails to include language requiring that Santander's lien survive dismissal or conversion of the case, unless the Plan is paid in full.**

Section 1325(a)(5)(B)(i)(II) provides that "if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law."[76] Paragraph 25 of the Plan also contains a dismissal provision, which provides that, "[i]f this case is dismissed . . . this Plan is no longer effective."[77]

Here, although paragraph 10 of the Plan does not contain a provision regarding dismissal or conversion, paragraph 25 provides that "[i]f this case is dismissed . . . this Plan is no longer effective."[78] When a chapter 13 plan is converted or dismissed, the plan becomes void.[79] Therefore, if the instant case is dismissed, the Plan will no longer be effective, and Santander will retain its lien.[80] Thus, because paragraph 25 provides that Santander's lien will not be released if the case is dismissed,[81] paragraph 10 of the Plan does not violate 11 U.S.C. § 1325(a)(5)(B)(i)(II) by failing

---

[75] *In re Martin*, 2022 WL 16937609, at *5 (holding that the bankruptcy court has the authority to approve a chapter 13 plan that is not inconsistent with the Bankruptcy Code).

[76] 11 U.S.C. § 1325(a)(5)(B)(i)(II).

[77] ECF No. 29, ¶ 25.

[78] ECF No. 29, ¶ 25.

[79] *In re Blendheim*, 803 F.3d at 487 ("[C]onversion or dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies available to him."); *Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji (In re Titus Chinedu Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012) ("[W]hen a debtor fails to fulfill their [sic] end of the bargain because of the dismissal of their case, a resulting finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are [sic] advantageous to the debtor.") (quoting *In re Hufford,* 460 B.R. 172, 177 (Bankr. N.D. Ohio 2011)).

[80] *See In re Blendheim*, 803 F.3d at 487.

[81] *Id.*

to include language requiring Santander's lien to survive dismissal or conversion of the case. Therefore, Debtor has shown that paragraph 10 of the Plan does not violate § 1325(a)(5)(B)(i)(II) of the Bankruptcy Code.

Ultimately, Santander's allowed secured claim is what Debtor owed under the Loan Agreement as of the Petition Date, which was $26,232.64, paragraph 10 of the Plan does not violate § 1325(a)(5)(B)(i)(I)(aa) by paying Santander's claim of $26,232.64 at the prime-plus interest rate of 7.75%, paragraph 10 of the Plan does not violate § 1325(a)(5)(B)(i)(I)(bb) because completion of the Plan payments under paragraph 10 means that Santander's allowed secured claim under the Loan Agreement will be satisfied in full, and paragraph 10 does not violate § 1325(a)(5)(B)(i)(II) because although it does not provide for retention of Santander's lien if the instant chapter 13 case is dismissed, paragraph 25 of the Plan *does* provide that Santander's lien will not be released if the case is dismissed. Thus, the Court holds that Debtor has met his burden of showing that the Plan meets all of § 1325(a)(5)(B)(i)'s confirmation requirements.

For the reasons stated herein, Santander Bank, N.A., as servicer for Santander Consumer USA, Inc.'s objection to confirmation is overruled, paragraph 10 of the Southern District of Texas "Uniform Plan and Motion for Valuation of Collateral" does not violate 11 U.S.C. § 1325(a)(5)(B)(i), and Israel Rodriguez, Jr.'s "Amended Chapter 13 Plan"[82] filed on May 13, 2026, is confirmed.

IV.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[82] ECF No. 48.

**SIGNED Friday, May 15, 2026**

Eduardo V. Rodriguez
**Chief United States Bankruptcy Judge**